Billy Gene **KELLY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 874–86.

Court of Criminal Appeals of Texas, En Banc.

April 13, 1988.

---

Jeff Blackburn, Amarillo, for appellant.

Danny E. Hill, Dist. Atty. and J.E. Brownlee and James Farren, Asst. Dist. Attys., Amarillo, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was convicted of the offense of injury to an elderly individual, Tex. Penal Code Ann. § 22.04, for which the jury assessed punishment at forty years' confinement in the Texas Department of Corrections. The Seventh Court of Appeals affirmed the judgment of the trial court. *Kelly v. State,* 713 S.W.2d 198 (Tex.App.— Amarillo 1986). We granted appellant's petition for discretionary review to determine whether the Court of Appeals failed to properly apply *Beggs v. State,* 597 S.W.2d 375 (Tex.Cr.App.1980), and *Alvarado v. State,* 704 S.W.2d 36 (Tex.Cr.App.1985), and thus erred in holding that petitioner's requested jury instructions on intent and knowledge were properly refused and that petitioner's objections to the prosecution's jury argument were properly overruled. We will remand to the Court of Appeals.

On the evening of October 3, 1983, appellant entered a bar in downtown Amarillo. Prior to his arrival at the bar, appellant had consumed several intoxicating beverages. Two hours later, after a few additional drinks, appellant became boisterous and was forcibly removed from the establishment. That same evening, Vernon Hickerson, the seventy-nine year old deceased victim, went to the Khiva Shrine Temple to attend a regularly scheduled meeting with his fellow Shriners. After the meeting, Vernon Hickerson and another elderly Shriner engaged in idle conversation while standing on the sidewalk in front of the Khiva Temple. While they were visiting, appellant was walking on the other side of the street toward his hotel. Appellant noticed the two men, and screamed, "What are you looking at?" The men ignored him, so he yelled, "What are you talking about?" Hickerson then replied, "I don't know if it's any of your business." Appellant became enraged at the two elderly Shriners. He charged across the street with such a singular sense of purpose that appellant was nearly struck by a passing motorist. When appellant reached the two elderly Shriners, he screamed, "Well, you old Son-of-a-bitch, I'll knock you on your ass." Appellant then struck his elderly victim in the face with such force that he landed on the sidewalk on his back, with his head against the brick wall of the building. Meanwhile, his companion ran inside the Temple for assistance. As appellant's victim lay prone on the sidewalk with a broken hip and in great pain, appellant completed his attack by kicking the elderly man in the ribs. Less than three days later, Vernon Hickerson died as a result of the injuries he sustained during the attack. The record is utterly devoid of any evidence that the seventy-nine year old complainant provoked or used force against his middle-aged assailant.

Appellant was charged in a two-count indictment, but the State elected to try him only on the count alleging injury to an elderly person pursuant to § 22.04 of the Penal Code.[1] After the State presented its

---

1. Sec. 22.04 states in pertinent part:

(a) A person commits an offense if he intentionally, knowingly, recklessly, or with crimi-

evidence and rested, appellant rested without presenting any evidence. Whereupon, the trial court charged the jury as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The court then applied the law to the facts, as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 3rd day of October 1983 in Potter County, Texas, the defendant, BILLY GENE KELLY, did then and there intentionally or knowingly engage in conduct that caused serious bodily injury to Vernon Hickerson, an individual who was older than sixty-five years of age, by striking Vernon Hickerson with his fist, then you will find the defendant guilty of intentionally or knowingly causing serious bodily injury to an elderly individual as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of intentionally or knowingly engaging in conduct that caused serious bodily injury to Vernon Hickerson.

Appellant contends in his first ground for review that the Court of Appeals failed to properly apply *Beggs v. State,* supra, thereby erring in holding appellant's requested jury instructions were properly refused.[2] The trial court gave the statutory definitions of intent and knowledge, defined various other terms, then applied the law to the facts as per *Watson v. State,* 548 S.W.2d 676 (Tex.Cr.App.1977) and Tex. Penal Code, § 6.03(a) and (b).

Appellant urges *Beggs,* supra, as his vehicle for the proposition that the definitions of the culpable mental states of intent and knowledge should be applied to the facts of his case. The crime of intentionally committing serious bodily injury to an elderly individual appears to be a "strict liability" offense. Tex.Penal Code, § 22.04. Ac-

---

nal negligence, by act or omission, engages in conduct that causes to a child who is 14 years of age or younger or to an individual who is 65 years of age or or older:

(1) serious bodily injury;
(2) serious physical or mental deficiency or impairment;
(3) disfigurement or deformity; or
(4) bodily injury.

(b) An offense under Subsection (a)(1), (2), or (3) of this section is a felony of the first degree when the conduct is committed intentionally or knowingly. When the conduct is engaged in recklessly it shall be a felony of the third degree.

2. Appellant objected to the "failure of the Court to include a specific charge on the intent required" under § 22.04, supra, and requested the following instructions on intent and knowledge:

You are further instructed that before you would be warranted in finding that the Defendant, Billy Gene Kelly, intentionally engaged in conduct that caused serious bodily injury to Vernon Hickerson as alleged in the indictment, you must find from the evidence beyond a reasonable doubt that the Defendant's conscious objective or desire was to cause serious bodily injury, as that term has been defined herein, on the date and at the place in question, by striking Vernon Hickerson with his fist. Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant of intentionally engaging in conduct that caused serious bodily injury to Vernon Hickerson, to wit: striking Vernon Hickerson with his fist, as alleged in the indictment.

You are further instructed that before you would be warranted in finding that the Defendant, Billy Gene Kelly, knowingly engaged in conduct that caused serious bodily injury to Vernon Hickerson, as alleged in the indictment, you must find from the evidence beyond a reasonable doubt that the Defendant was aware that his conduct was reasonably certain to cause serious bodily injury, as that term has been defined herein, on the date and at the place in question. Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant of knowingly engaging in conduct that caused serious bodily injury to Vernon Hickerson, to wit: striking Vernon Hickerson with his fist, as alleged in the indictment.

cording to the statute, an actor commits an offense if he: (1) knowingly or intentionally engages in conduct (2) that ultimately causes serious bodily injury. A bare reading of this statute seems to focus only on the culpability involved once the initial act is committed. However, assault statutes focus on the result of the actor's conduct. See and compare T.P.C.Ann. §§ 22.01–22.-03. In 1980, we sought to clarify the meaning of § 22.04 in *Beggs,* supra. Moreover, in 1985, the companion case of *Alvarado,* supra, followed the holding in *Beggs,* supra. Both cases stand for the proposition that the injury to a child/elderly individual statute is not a "strict liability" law. They hold that the phrase "engage in conduct" is *vestigial* language and that the focus of culpability is on the result of the conduct. The teaching of both cases is that:

> ... the allegation in the indictment that the appellant did "(1) intentionally and (2) knowingly engage in conduct that caused serious bodily injury" was an allegation (1) that it was [her] conscious objective or desire to cause serious bodily injury and (2) that [she] was aware that her conduct was reasonably certain to cause serious bodily injury.

*Beggs,* supra, at 377.

In sum, as injury to an elderly individual is a result offense, the culpable mental state must apply to the result of appellant's conduct, or in the case at bar the serious bodily injury inflicted on the elderly man.

In the instant case, appellant was entitled to his requested jury charge in accordance with *Beggs,* supra, and *Alvarado,* supra, as assault is a result offense. The trial court's failure to give the requested charge constituted error. However, the finding of error in the court's charge to the jury "begins—not ends the inquiry; the next step is to make an evidentiary review ... as well as a review ... of the record as a whole which may illuminate the actual, not just theoretical harm to the [appellant]." *Almanza v. State,* 686 S.W.2d 157,

174 (Tex.Cr.App.1984). *Arline v. State,* 721 S.W.2d 348 (Tex.Cr.App.1986). We shall not discuss appellant's second ground of review regarding the prosecutor's argument as the first ground mandates a remand of the case.[3] The judgment of the Amarillo Court of Appeals is reversed and the cause is remanded for an *Almanza* harm analysis consistent with this opinion. It is so ordered.

ONION, P.J., and TEAGUE, J., dissent to the remand.

WHITE, J., concurs in the result.

---

**3.** Appellant raised what is now termed his second ground for review before the Court of Appeals. In misinterpreting the doctrine of *Beggs–Alvarado,* that court understandably found no error or harm in the prosecutor's final argument. On remand, appellant's claim will necessarily become part of the court's analysis under *Almanza v. State,* supra.