Kevin Ray FULLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–90–329–CR.

Court of Appeals of Texas,
Austin.

Nov. 13, 1991.

Rehearing Overruled Dec. 18, 1991.

Jim Vollers, Austin, for appellant.

Ken Oden, County Atty., Giselle Horton, Asst. County Atty., Austin, for appellee.

Before POWERS, JONES and SMITH, JJ.

JONES, Justice.

A jury convicted Kevin Ray Fuller, appellant, of assault with bodily injury, Tex. Penal Code Ann. § 22.01(a)(1) (1989), and assessed his punishment at sixty days confinement and an $800.00 fine, both probated for one year. On appeal appellant asserts four points of error in which he argues that the trial court erred in (1) defining "intentionally" and "knowingly" too broadly in the jury charge; and (2) refusing to allow appellant to present expert testimony on the issue of punishment. We overrule appellant's points of error and affirm the judgment.

## STATEMENT OF FACTS

While on a hunting trip with friends, appellant was told by his fiancée that some two months earlier she had "slept with" John Nichols. She also told appellant she believed that their recent venereal discomfort was attributable to her relations with Nichols. On hearing this, appellant cut short the hunting trip and, upon returning, immediately went to Nichols's apartment with his fiancée and another man.

When the three arrived at the apartment, Nichols's roommate answered the door, and appellant ran past him in search of Nichols. Appellant entered a bedroom where Nichols was asleep and woke him. After a brief verbal exchange, appellant punched Nichols in both eyes. Nichols fell to the floor, whereupon appellant kicked him in the stomach with his cowboy boot. As a result of appellant's actions, Nichols's eyes were swollen shut and two of his teeth were chipped. Also, Nichols went to the hospital where he received five stitches in the eye area and underwent X-rays to determine if any bones had been broken.

## CHARGE ERROR

Pursuant to Section 22.01(a)(1) of the Texas Penal Code, appellant was convicted of intentionally or knowingly causing bodily injury to Nichols by hitting Nichols about the head with his hand. In his first, second, and third points of error, appellant argues that the trial court erred by defining "intentionally" and "knowingly" too broadly in the jury charge. Quoting almost verbatim from definitions found in the Texas Penal Code, the trial court included the following definitions in the jury charge:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to *engage in the conduct* or cause the result.

*A person acts knowingly, or with knowledge, with respect to the nature of his conduct when he is aware of the nature of his conduct.* A person acts knowingly, or with knowledge, with re-

spect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

(Emphasis added.) *Compare with* Tex. Penal Code Ann. §§ 6.03(a) & (b) (1974). Appellant points out that assault is a "result" offense rather than a "nature of conduct" offense. Accordingly, he contends that including the "nature of conduct" language as well as the "cause the result" language in the charge improperly allowed the jury to convict him if they merely found that he intentionally engaged in the *conduct* (or was aware of the nature of his conduct), even if they did not believe he intended the *result* (or was aware that his conduct was reasonably certain to cause the result).

There is no question that section 22.01 of the Penal Code, like other assault statutes, focuses on the result of the actor's conduct. *See, e.g., Kelly v. State*, 748 S.W.2d 236, 239 (Tex.Crim.App.1988). The Court of Criminal Appeals has often held the inclusion of the "nature of conduct" phrase in the definition paragraph of a jury charge to be error where the offense charged was a result offense. *See Haggins v. State*, 785 S.W.2d 827 (Tex.Crim.App.1990); *Kelly*, 748 S.W.2d 236; *Alvarado v. State*, 704 S.W.2d 36 (Tex.Crim.App.1985); *cf. Beggs v. State*, 597 S.W.2d 375 (Tex.Crim.App. 1980). It was puzzling, therefore, when that court declared in *Kinnamon v. State*, 791 S.W.2d 84 (Tex.Crim.App.1990), that the "engage in conduct" language, when read in conjunction with an application paragraph that permitted a conviction only upon a finding that the defendant intended the result, was "irrelevant with respect to the appellant's culpable mental state." *Kinnamon*, 791 S.W.2d at 89. The *Kinnamon* opinion can be read to hold that the inclusion of the offending "engage in conduct" language in the definitional portion of a jury charge is simply not error as long as the jury's ability to convict is correctly limited in the application paragraph.

■ This inconsistency was arguably resolved in *Turner v. State*, 805 S.W.2d 423 (Tex.Crim.App.1991). In an opinion concurring in the denial of a motion for rehearing, four members of the *Turner* court stated that, in light of *Alvarado, Kelly,* and *Haggins, Kinnamon* was "wrongly decided." *See Turner*, 805 S.W.2d at 432. In light of *Turner*, we do not think the Court of Criminal Appeals will follow what could be interpreted as a "no error" holding in *Kinnamon*. Rather, we conclude that the correct analysis is that the inclusion of the "engage in conduct" language in the definitional portion of a jury charge is in fact error where the offense charged is a result offense.

■ However, as the court stated in *Kelly*, the finding of error in the charge "begins—not ends the inquiry; the next step is to make an evidentiary review ... as well as a review ... of the record as a whole which may illuminate the actual, not just theoretical harm to the [appellant]." *Kelly*, 748 S.W.2d at 239 (quoting from *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim.App.1984) (opinion on motion for rehearing)). Indeed, we believe that the *Kinnamon* opinion is more accurately construed as focusing on an absence of *harm* rather than an absence of *error*. We will, therefore, conduct a harm analysis to determine if the error requires reversal in the context of the present case.

■ The standard for determining if charge error is harmful is well established: "If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if ... [there was] *some* harm to the accused from the error." *Almanza*, 686 S.W.2d at 171. The term "some" has been construed to mean "any." Therefore, a reversal is required if the accused has suffered *any* actual, rather than theoretical, harm from the error. *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App. 1986). It is appellant's burden to persuade this Court that he suffered any actual harm as a consequence of the alleged charging error. If he is unable to do so, the alleged charging error will not result in a reversal of the conviction. *See Belyeu v. State*, 791 S.W.2d 66, 75 (Tex.Crim.App. 1989), *cert. denied*, — U.S. —, 111 S.Ct. 1337, 113 L.Ed.2d 269 (1991).

In determining whether a charge error requires reversal, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. Therefore, in the present case we must consider the following factors: the character and quantum of evidence tending to indicate that appellant intended bodily injury to Nichols or was aware that his conduct was reasonably certain to cause bodily injury; whether the alleged objectionable instructions authorized inferences which would not otherwise have been available to the jury; the extent to which the instructions unduly emphasized the weight to be given selected evidence; and the manner or degree to which the instruction was exploited during final argument by the prosecutor. *See LaPoint v. State*, 750 S.W.2d 180, 191–92 (Tex.Crim.App.1988) (opinion on motion for rehearing). In light of the remainder of the jury charge, the evidence actually adduced, and the closing arguments actually made, we are not persuaded that the error in the abstract definitional portion of the charge made any contribution to the jury's verdict, for the following reasons.

Most important, the application paragraph of the charge limited the definitions of "intentionally" and "knowingly." The charge provided that in order to find appellant guilty of assault, the jury must find that "the defendant, Kevin R. Fuller, ... did then and there *intentionally or knowingly cause bodily injury* to John Nichols by hitting John Nichols about the head with his hand,...." (Emphasis added.) Thus, notwithstanding the erroneous definition, the jury could not have convicted appellant without a finding that he intended the result or knew what the result would be. It was the presence of just such language in the application paragraphs of the jury charges in *Kinnamon* and *Turner* that led the court to conclude that no reversal was required.

Moreover, mental culpability must generally be proven by circumstantial evidence. *LaPoint*, 750 S.W.2d at 192. In the present case, therefore, the jury could infer appellant's mental state from the circumstances surrounding the incident in question. Although appellant testified that he did not intend to cause any bodily injury to Nichols, every relevant circumstance militates against the plausibility of that claim. Appellant stormed into Nichols's apartment in anger. He eventually found Nichols in a bedroom asleep and, after a short verbal exchange, began hitting him in the face and head. When Nichols collapsed on the floor, appellant continued by kicking him in the stomach with his cowboy boot. Thus, the inference that appellant did indeed intend to cause bodily injury to Nichols strongly outweighs appellant's denial of such an intent.

Finally, there is nothing in the record to indicate that the prosecutor, in his summation to the jury, suggested that appellant could be found guilty without the requisite intent or knowledge; rather, the prosecutor talked in terms of intending the result or being aware that the result could happen. *Cf. Alvarado*, 704 S.W.2d at 37. In his summation to the jury, appellant's counsel likewise emphasized that the culpable mental state goes to the result of the conduct.

Based on our discussion above, we conclude that appellant has not demonstrated that he suffered any actual harm from the erroneous inclusion of the "engage in conduct" phrase in the charge.[1] Appellant's first, second, and third points of error are overruled.

---

1. Normally, in the instance of charging error with timely objection, the "some harm" test set out in *Almanza* is applied. *See Belyeu*, 791 S.W.2d at 75. However, if the error implicates rights flowing from the United States Constitution, then the general harmless-error rule, Tex. R.App.P. 81(b)(2), must be applied. *Id.* Appellant urges only errors involving state procedure and state law; therefore we apply the *Almanza* standard. *See Haggins*, 785 S.W.2d at 828; *Kelly*, 748 S.W.2d at 239 (both cases remanded for an *Almanza* analysis). However, even if we were to apply the standard of Rule 81(b)(2), our result here would be the same.

## EXPERT TESTIMONY

In his fourth point of error, appellant argues that the trial court erred by refusing to allow his expert witness, Dr. Webb, to testify about certain matters during the punishment phase of the trial. Dr. Webb testified as to the legal and social purposes of assessing punishment in criminal cases. He also testified as to the legal and social principles involved in assessing punishment. The trial court refused, however, to allow Dr. Webb to apply these principles to a hypothetical fact situation based on the facts of the present case (Dr. Webb proposed to testify that appellant should not be incarcerated).

 The decision whether to allow a witness to testify as an expert is committed to the sound discretion of the trial court. *Duckett v. State*, 797 S.W.2d 906, 910 (Tex. Crim.App.1990). The threshold determination for admitting expert testimony is whether the specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. *Id.;* Tex.R.Crim.Evid. 702.

While there is no certain test for determining the admissibility of expert testimony in this context, the Court of Criminal Appeals has placed limitations on the use of such testimony. While experts may testify at the punishment stage as to the defendant's propensity to commit violence in the future, a witness may not recommend a particular punishment to the trier of fact. *See Sattiewhite v. State*, 786 S.W.2d 271, 290 (Tex.Crim.App.1989), *cert. denied*, — U.S. —, 111 S.Ct. 226, 112 L.Ed.2d 181 (1990). Such testimony would escalate into a battle of experts. *Id.* While expert testimony should not be excluded merely because it encompasses or embraces an "ultimate issue" or fact, such evidence may not *decide* that fact or issue for the jury. *Duckett,* 797 S.W.2d at 914. Expert testimony is admissible to aid the jury in its decision, not to supplant that decision. *Id.*

In a bill of exception, appellant's counsel elicited testimony from Dr. Webb to the effect that no legal or social purpose

would be served by incarcerating appellant and that appellant should receive no more than "nominal punishment." Based on our discussion above, we conclude that the trial court did not abuse its discretion in excluding this testimony. Appellant's fourth point of error is overruled.

## CONCLUSION

For the foregoing reasons, we conclude that the error in the jury charge was harmless. We also conclude that the trial court did not abuse its discretion in excluding the expert testimony in question. The judgment of the trial court is affirmed.