TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00101-CR






Christopher Freeman, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0954605, HONORABLE JON N. WISSER, JUDGE PRESIDING






 Appellant Christopher Freeman appeals his conviction for aggravated assault with a deadly
weapon against a public servant. See Tex. Penal Code Ann. §§ 22.01 (West 1994) & 22.02 (West 1994
& Supp. 1997). Punishment was assessed at eighteen years of imprisonment. In five points of error,
appellant contends the trial court erred: (1) because the conviction is not supported by legally and factually
sufficient evidence; (2) by incorrectly instructing the jury regarding the definition of "intentionally"; (3) by
admitting evidence that the complaining officer had performed CPR on another officer killed when he was
struck by a car in another incident; (4) by allowing the State to attack appellant's counsel by implying that
appellant's attorney had instructed him to lie in court; and (5) by permitting a rebuttal witness to testify who
was present during portions of the trial after Texas Rule of Criminal Evidence 613 was invoked. We will
affirm the trial court's judgment.


BACKGROUND


 At about 9:30 on the morning of September 15, 1995, Austin Police Officers Ronald
Russell, Nicholas Wright, and Michael Barger were conducting radar speed checks in the 1400 block of
Briarcliff Street. Each of the officers was wearing an Austin Police Department uniform; two patrol cars
were parked in residential driveways near the curb. Officer Barger was operating the radar gun, Officer
Russell was flagging down the vehicles to stop, and Officer Wright was issuing citations. Officer Barger
told Officer Russell that a white car was driving at a rate of forty-three miles per hour in a thirty miles per
hour zone. Officer Russell then walked into the road, standing in the middle of the lane in which the vehicle
was traveling, to wave over the driver. After Officer Russell made eye contact with appellant who was
driving the vehicle, appellant began to slow down and pull toward the curb. When appellant was about
fifty feet from Officer Russell, he looked at the two other officers, looked back at Officer Russell with a
determined look, drove back toward the center lane, aiming the car directly at Officer Russell, and
accelerated to about twenty-five to forty miles per hour. Officer Russell started walking backwards to
avoid being hit by the car while he continued pointing to the curb, indicating for appellant to pull over. 
Officer Russell was forced to jump backwards across the center stripe to avoid being struck. Appellant
did not stop his vehicle and passed over the place where Officer Russell had been standing, missing him
by only three to four feet. Officer Russell yelled at appellant to stop; however, appellant continued driving
away, leading the officers in a high speed chase through the residential area. Appellant was apprehended
at a friend's home.

 Appellant was indicted for aggravated assault with a deadly weapon on a public servant
and, following a jury trial, was convicted. After the trial court found appellant had been convicted of two
prior felonies, he was sentenced to eighteen years of imprisonment. Appellant appeals.


DISCUSSION


 In his first point of error, appellant challenges both the legal and factual sufficiency of the
evidence to support his conviction. In deciding a legal sufficiency point, we view the evidence in the light
most favorable to the verdict and ask whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979);
Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). A person commits the offense of
aggravated assault against a public servant with a deadly weapon if he intentionally or knowingly threatens
a person whom the actor knows is a public servant lawfully discharging an official duty with imminent bodily
injury and uses or exhibits a deadly weapon during the commission of the assault. Penal Code §§
22.01(a)(2), .02(a)(2), .02(b)(2). The indictment alleged that Freeman intentionally and knowingly
threatened Ronald Russell with imminent bodily injury and used or exhibited a deadly weapon, a motor
vehicle. The jury charge included almost identical language, stating that a person commits assault if he
intentionally or knowingly threatens another with imminent bodily injury.

 Freeman argues the record contains more than reasonable doubt as to whether he intended
to place Officer Russell in imminent danger of serious bodily injury or knew Officer Russell was in danger. 
However, the State was only required to prove Freeman intentionally or knowingly performed an act which
threatened Officer Russell with imminent bodily injury. See Penal Code § 22.01(a)(2); De Leon v. State.
865 S.W.2d 139, 142 (Tex. App.--Corpus Christi 1993, no pet.).

 Our review of the record shows there is evidence to support a conviction for aggravated
assault on a public servant with a deadly weapon. Officers Russell, Barger, and Wright testified that on
the morning of the occurrence, they were dressed in police uniforms and conducting speed checks. They
testified that Officer Russell was directing Freeman to stop and that he began stopping his vehicle. 
However, after making eye contact with Officer Russell and looking at the two other officers, Freeman's
expression changed to one of determination as he accelerated and steered the vehicle directly toward
Officer Russell, requiring Officer Russell to move quickly to avoid being struck. Freeman steered the
vehicle over the location where Officer Russell had been standing seconds earlier--the reasonable inference
being he would have been hit had he not jumped out of the way. Officer Russell further testified that he was
very afraid.

 Freeman argues that, because Officer Russell back-stepped out of the way and was three
feet from the passing vehicle, there is reasonable doubt regarding whether Freeman knew Officer Russell
was in imminent harm. However, Freeman's ability to commit a battery need not be proven; therefore, the
fact that, by his quick movement, Officer Russell was able to avoid being struck by the vehicle is irrelevant. 
See De Leon, 865 S.W.2d at 142.

 Because a rational trier of fact could have found, based upon this evidence, that Freeman
intentionally or knowingly threatened bodily injury to a person he knew was a public servant lawfully
discharging an official duty and used or exhibited a deadly weapon (1) during the commission of the assault,
we hold the evidence is legally sufficient to support a finding that Freeman committed the offense of
aggravated assault on a public servant with a deadly weapon.

 Freeman also contends the evidence is factually insufficient to support the conviction. The
standard of review for factual sufficiency claims has been established. We view all the evidence without
the prism "in the light most favorable to the prosecution" and set aside the verdict only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin
1992, pet. ref'd untimely filed). We must consider all the relevant record evidence, not just the evidence
that supports the verdict. Clewis, 922 S.W.2d at 129; Stone, 823 S.W.2d at 381.

 In addition to the evidence discussed above, Freeman testified that he had worked all night
before the occurrence and was taking breakfast to his mother when he encountered the officers. He stated
that he was tired and looked down to put a compact disk in his car stereo and in doing so may have slowed
down and turned the wheel slightly. He stated that when he looked back at the road, a police officer was
standing in the lane in which he was traveling and that he applied the brakes and turned the wheels toward
the curb to avoid hitting the officer.

 While Freeman's testimony presents another explanation for Freeman's behavior, we
cannot say the jury's verdict was so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Clewis, 922 S.W.2d at 129. The jury was free to determine the credibility of each
witness and the weight of the evidence. We, therefore, hold the evidence is factually sufficient to support
a finding that Freeman committed the offense of aggravated assault on a public servant with a deadly
weapon. Having determined the evidence is both legally and factually sufficient, we overrule Freeman's
first point of error.

 In his second point of error, Freeman challenges the court's charge, claiming the court's
definition of "intentionally" allowed the jury to return a guilty verdict based only upon proof of his conduct
rather than proof that he intended to cause the results of his conduct. Freeman, however, failed to object
to the charge at trial and, therefore, must demonstrate that any error in the charge caused him to suffer
egregious harm. See Almanza v. State, 686 S.W.2d 157, 171-72 (Tex. Crim. App. 1986). 

 The applicable portion of the jury charge in Freeman's case provides:


 A person acts intentionally, or with intent, with respect to a result of his conduct
when it is his conscious objective or desire to engage in the conduct or cause the result. 
[emphasis added].


 A person acts knowingly, or with knowledge, with respect to a result of his
conduct when he is aware that his conduct is reasonably certain to cause the result. 

 Now bearing in mind the foregoing instructions, if you believe from the evidence
beyond a reasonable doubt that the defendant Christopher Freeman, on or about the 15th
day of September A.D. 1995, in the County of Travis, and State of Texas, as alleged in
the indictment, did then and there intentionally or knowingly threaten Ronald Russell with
imminent bodily injury and did then and there use or exhibit a deadly weapon, to-wit: a
motor vehicle, that in the manner of its use or intended use was capable of causing death
or serious bodily injury, during the commission of this offense; and the said Christopher
Freeman then and there knew that Ronald Russell was a public servant, to-wit: an Austin
Police Department Officer, and the said offense was committed while Ronald Russell was
lawfully discharging an official duty, to-wit: directing a traffic stop, you will find the
defendant guilty of Aggravated Assault Against A Public Servant, and so say by your
verdict; but if you do not so believe or if you have a reasonable doubt thereof, you will find
the defendant not guilty of Aggravated Assault Against A Public Servant and proceed to
consider the lesser offense of Aggravated Assault as set forth in the next paragraph.


Freeman complains that the charge allowed the jury merely to find that he engaged in certain conduct
without considering what result he intended. 

 Before a person may be found guilty of aggravated assault under section 22.02 of the Texas
Penal Code, the accused must first have committed simple assault by at least one of three methods: (1)
intentionally, knowingly, or recklessly causing another bodily injury; (2) intentionally or knowingly causing
physical contact with another when the actor knows or should reasonably believe that the other will regard
the contact as offensive or provocative; or (3) intentionally or knowingly threatening another with imminent
bodily injury. Penal Code § 22.01(a), .02.  Each of the three theories is sufficient, independent of the other
two, to constitute an offense. The first two stated are result-of-conduct offenses. Sneed v. State, 803
S.W.2d 833, 835 (Tex. App.--Dallas 1991, pet. ref'd). The culpable mental state required for these two
theories applies to causing the specified result rather than to engaging in the conduct. Id. In other words,
the State must prove that a defendant committed an act and intended to cause the result. The third theory,
threatening another with imminent bodily injury, is a nature-of-conduct offense and requires no particular
result. Peterson v. State, 836 S.W.2d 760, 765 (Tex. App.--El Paso 1992, pet. ref'd); see also Sneed,
803 S.W.2d at 835 n.2. The offense is proven if the accused intentionally or knowingly engaged in the
prohibited conduct--threatening another with imminent bodily injury--without regard to the consequences
of the act. Penal Code § 22.01(a); Peterson, 836 S.W.2d at 765; Sneed, 803 S.W.2d at 835. In the
instant cause, the State charged Freeman with threatening Officer Russell with imminent bodily injury, a
conduct offense.

 Freeman relies upon Sneed for his argument that the trial court erred by instructing the jury
in such a way as to allow him to be convicted based upon his conduct alone. Freeman's case is
distinguishable from Sneed. Sneed was charged with aggravated assault under the first theory of assault,
intentionally, knowingly, or recklessly causing bodily injury to another. The crime for which Sneed was
charged was, therefore, a result-of-conduct offense; and it was improper for the trial judge to include
language in the jury charge that allowed jurors to convict Sneed based upon his conduct alone. The Sneed
court noted that threatening another with imminent bodily injury is a nature-of-conduct offense and has no
required result. Sneed, 803 S.W.2d at 835 n.2. Freeman's reliance on Sneed, therefore, is misplaced. 
Freeman's case is also distinguishable from Fuller v. State, 819 S.W.2d 254 (Tex. App.--Austin 1991,
pet. ref'd). While this Court held in Fuller that the crime of assault is a result-of-conduct offense, the
assault in Fuller involved actual physical injury, thus distinguishing it from the assault by threat in Freeman's
case.

 The State charged Freeman under a nature-of-conduct theory of assault and was,
therefore, not required to prove any particular result from Freeman's actions. The State was required to
prove only that Freeman intentionally or knowingly threatened Officer Russell with imminent bodily injury. 
Freeman has not demonstrated error in the charge. Additionally, even if Freeman were correct that assault
by threat is a result-of-conduct offense, the record does not reveal and he failed to demonstrate that he
suffered egregious harm by the inclusion of both result and conduct language in the charge. See Almanza,
686 S.W.2d at 171-72. We, therefore, overrule Freeman's second point of error.

 In his third point of error, Freeman argues the trial court erred by admitting Officer Russell's
testimony about an unrelated incident involving the death of an Austin police officer who was struck and
killed by a vehicle and further erred by allowing the State to refer to the testimony during its closing
argument. We review the trial court's ruling regarding the admission or exclusion of evidence for an abuse
of discretion. See Tex. R. Crim. Evid. 103; Montgomery v. State, 810 S.W.2d 372, 390-91 (Tex. Crim.
App. 1990).

 During the direct examination of Officer Russell, the prosecutor asked him if he had ever
known of an officer being seriously injured or killed due to being struck by a vehicle. After Officer Russell
answered yes, the prosecutor asked if Officer Russell had ever given CPR to an officer who had been
struck by a vehicle. Officer Russell stated that he had. In response to the prosecutor's inquiry, Officer
Russell stated that the officer he had assisted was Officer Drew Bolin. (2)

 Freeman's objection to the testimony was overruled, and on appeal he argues that the
testimony was inadmissible under rule 403 of the Texas Rules of Criminal Evidence because its probative
value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or needless presentation of cumulative evidence. See Tex. R. Crim. Evid. 403. Specifically,
Freeman contends the trial court erred in overruling his objection because "[u]nder the Rule 403 standard,
the Bolin testimony clearly should have been excluded." He did not make this specific objection before
the trial court; rather, the objection at trial was that "[the prosecutor's] going to start talking about some
collision that's completely unrelated to this case." We have found no specific objection requiring the
balancing test under rule 403. Because Freeman's objection appears to relate to the relevance of the
evidence only, we hold he has not preserved a rule 403 objection for appeal. See Thomas v. State, 723
S.W.2d 696, 700 (Tex. Crim. App. 1986) (holding the complaint on appeal must comport with the trial
objection); Skillern v. State, 890 S.W.2d 849, 865 (Tex. App.--Austin 1994, pet. ref'd).

 Turning to the relevance of Officer Russell's testimony, evidence is "relevant" if it has any
tendency to make the existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence. Tex. R. Crim. Evid. 401. Generally, all
relevant evidence is admissible. See Tex. R. Crim. Evid. 402. The State argues that Officer Russell's
testimony was relevant to prove that Freeman's car was used as a deadly weapon and that Officer Russell
was threatened with imminent bodily injury. We agree. See Penal Code § 22.02(a)(2), .01(a)(2); Tex.
R. Crim. Evid. 401. We cannot say, therefore, that the trial court abused its discretion in admitting Officer
Russell's testimony regarding his past experience with Officer Bolin.

 Even if admitting the testimony were error, it was harmless. When we conduct a harm
analysis, we must: (1) isolate the error and all of its effects, and (2) determine whether a juror might have
reached a different result if the error and its effects had not resulted. Harris v. State, 790 S.W.2d 568,
588 (Tex. Crim. App. 1989). Factors for us to consider include: (a) the source of the error, (b) the nature
of the error, (c) whether or to what extent it was emphasized by the State, and (d) its probable collateral
implications. Id. at 587. Moreover, the court should also consider how much weight a juror would
probably place upon the error and whether declaring the error harmless would encourage the State to
repeat it with impunity. Id. The existence of overwhelming evidence may also be a factor to consider in
determining whether the error had any effect on the jury. Id. at 588. The source and nature of the alleged
error in this case was the reference to Officer Bolin. After Officer Bolin's name was mentioned, the State
did not emphasize his identity and did not ask any additional questions regarding Officer Bolin or the events
leading up to his death. Additionally, while the State did mention during its closing argument Officer
Russell's experience with assisting a fellow officer who had been struck by a vehicle, the prosecutor did
not mention Officer Bolin specifically. With respect to the impact of mentioning the experience with Officer
Bolin, the other evidence during the trial which has been previously discussed overwhelmingly establishes
the elements of the crime of aggravated assault on a public servant with a deadly weapon. We, therefore,
conclude beyond a reasonable doubt that the admission of Officer Bolin's name made no contribution to
Freeman's conviction and, therefore, was harmless. See Tex. R. App. P. 81(b)(2).

 Because the trial court did not err in admitting Officer Russell's testimony about Officer
Bolin's accident, it was proper for the State to refer to the testimony and facts in closing argument. See
Richardson v. State, 879 S.W.2d 874, 881 (Tex. Crim. App. 1993); Brown v. State, 692 S.W.2d 497,
502 (Tex. Crim. App. 1985). We, therefore, overrule Freeman's third point of error.

 In his fourth point of error, Freeman argues the State impermissibly attacked him by
attacking his trial counsel. During his cross-examination of Freeman, the prosecutor asked Freeman several
questions regarding a prior conviction for burglary. Freeman testified that he did not commit the crime but
that he had told the judge he committed the crime, despite that fact that it was untrue, because his attorney
told him to do so. While Freeman contends the questions were an impermissible attack on his defense
counsel, the State counters that it was an attack on Freeman's credibility, pointing to his propensity to lie
when it was in his best interests. The record shows, however, that Freeman did not object to the State's
questions. He has, therefore, failed to preserve anything for review on appeal. See Tex. R. App. P. 52(a);
cf. Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (appellant forfeited any right to
complain of jury argument in which State attacked him "over the shoulders of counsel" because he failed
to object). 

 In his fifth point of error, Freeman contends the trial court erred by permitting Keith Storm
to testify as a rebuttal witness for the State because Storm was present in court during a portion of
testimony after Freeman had invoked Texas Rule of Criminal Evidence 613 (the "Rule"). The record
indicates that Storm was present in the courtroom during the rebuttal testimony of Officer Barger who
testified immediately before Storm.

 The purpose of the Rule is to prevent corroboration, contradiction, and the influencing of
witnesses. Bell v. State, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996); Webb v. State, 766 S.W.2d 236,
239 (Tex. Crim. App. 1989). Once it is invoked, witnesses should not be allowed to hear any testimony
in the case or talk to any other person about the case without the court's permission. Tex. Code Crim.
Proc. Ann. arts. 36.05 & 36.06 (West 1981); Beasley v. State, 810 S.W.2d 838, 842 (Tex. App.--Fort
Worth 1991, pet. ref'd). While the trial court is obligated to order witnesses excluded during other
witnesses' testimony, the court's decision to allow testimony from a witness who has violated the Rule is
discretionary. Bell, 938 S.W.2d at 50. Unless an abuse of discretion is shown, it is presumed on appeal
that the trial court properly exercised its discretion. Id.; Valdez v. State, 776 S.W.2d 162, 170 (Tex.
Crim. App.1989), cert. denied, 495 U.S. 963 (1990). In reviewing the trial court's decision to allow the
testimony, we look at whether or not the defendant was harmed or prejudiced by the witness's violation;
that is, whether or not the witness's presence during other testimony resulted in injury to the defendant. 
Bell, 938 S.W.2d at 50. Two suggested criteria for determining injury or prejudice in this situation are (a)
whether the witness actually conferred with or heard testimony of other witnesses, and (b) whether the
witness's testimony contradicted testimony of a witness from the opposing side or corroborated testimony
of a witness he had conferred with or heard. Id.; Webb, 766 S.W.2d at 240.

 In this case, it is clear that Storm violated the Rule. The trial court had imposed the Rule
prior to the testimony of the State's first witness, yet Storm was present in the courtroom during Officer
Barger's rebuttal testimony. The record does not precisely show when Storm arrived in the courtroom;
however, at the end of Freeman's testimony and after defense rested, the State informed the court that its
rebuttal witness had not yet arrived. We can infer from the record that neither Storm nor Officer Barger
was in the courtroom at the conclusion of Freeman's testimony and that at most, Mr. Storm was in the
courtroom during Officer Barger's rebuttal testimony.

 Storm's testimony was unrelated to Officer Barger's testimony and Storm, therefore, could
not have been influenced by Officer Barger's testimony. Officer Barger was recalled to testify about the
number of police officers and police vehicles involved in the chase and subsequent arrest of Freeman. 
Storm, the store manager at the Wal-Mart which employed Freeman, testified about whether Freeman had
worked the overnight shift ending on the morning of September 15, 1995. Therefore, Storm's testimony
in no way harmed or prejudiced Freeman. See Bell, 938 S.W.2d at 50. Because Freeman was neither
harmed nor prejudiced by the witness's violation, we hold the trial court did not abuse its discretion in
allowing Storm to testify and overrule Freeman's fifth point of error.


CONCLUSION


 Having overruled each of Freeman's points of error, we affirm the judgment of the trial
court.


 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: July 3, 1997

Do Not Publish
1. Freeman does not challenge on appeal the jury's finding that his vehicle was a deadly weapon. 
2. The death of Officer Bolin was widely publicized in Austin and the surrounding communities. 



ility, pointing to his propensity to lie
when it was in his best interests. The record shows, however, that Freeman did not object to the State's
questions. He has, therefore, failed to preserve anything for review on appeal. See Tex. R. App. P. 52(a);
cf. Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (appellant forfeited any right to
complain of jury argument in which State attacked him "over the shoulders of counsel" because he failed
to object). 

 In his fifth point of error, Freeman contends the trial court erred by permitting Keith Storm
to testify as a rebuttal witness for the State because Storm was present in court during a portion of
testimony after Freeman had invoked Texas Rule of Criminal Evidence 613 (the "Rule"). The record
indicates that Storm was present in the courtroom during the rebuttal testimony of Officer Barger who
testified immediately before Storm.

 The purpose of the Rule is to prevent corroboration, contradiction, and the influencing of
witnesses. Bell v. State, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996); Webb v. State, 766 S.W.2d 236,
239 (Tex. Crim. App. 1989). Once it is invoked, witnesses should not be allowed to hear any testimony
in the case or talk to any other person about the case without the court's permission. Tex. Code Crim.
Proc. Ann. arts. 36.05 & 36.06 (West 1981); Beasley v. State, 810 S.W.2d 838, 842 (Tex. App.--Fort
Worth 1991, pet. ref'd). While the trial court is obligated to order witnesses excluded during other
witnesses' testimony, the court's decision to allow testimony from a witness who has violated the Rule is
discretionary. Bell, 938 S.W.2d at 50. Unless an abuse of discretion is shown, it is presumed on appeal
that the trial court properly exercised its discretion. Id.; Valdez v. State, 776 S.W.2d 162, 170 (Tex.
Crim. App.1989), cert. denied, 495 U.S. 963 (1990). In reviewing the trial court's decision to allow the
testimony, we look at whether or not the defendant was harmed or prejudiced by the witness's violation;
that is, whether or not the witness's presence during other testimony resulted in injury to the defendant. 
Bell, 938 S.W.2d at 50. Two suggested criteria for determ