**Opinion issued November 26, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00774-CR

————————————

**EMORLADE SAMMY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1735196**

---

## MEMORANDUM OPINION

A jury found appellant, Emorlade Sammy, guilty of the offense of assault of

a family member[1] and assessed his punishment at confinement for 365 days and a

---

[1]    *See* TEX. PENAL CODE ANN. § 22.01(b)(2) (Vernon 2011).

fine of $1,000.  In two issues, appellant contends that the trial court erred in including in its definition of "intentionally" in its charge to the jury, language that "authorized conviction on a set of facts (intent to act, but no intent to harm) that did not constitute an offense" and he received ineffective assistance of counsel at trial.

We affirm.

## Background

The complainant, Chie "Janet" Horimoto, testified that she and appellant had dated since 2005 and lived together from 2009 to 2011.  On January 29, 2011, she and appellant attended a friend's birthday party at a nearby club.  When they left at 1:00 a.m. the next morning, appellant initially agreed that the complainant would drive home because he had been "drinking heavily," but he then refused to let her drive when they got to her car.  After an argument, appellant drove off without her.  Because she did not have her cellular telephone, and appellant had her keys and identification, the complainant walked home.  When she arrived, the complainant rang the doorbell several times, but finally sat down outside to wait until "morning" when she asked a neighbor, Cindy Seale, for help.

Seale's boyfriend, Jonathan Christ, used a ladder to get into an open second-story window of the complainant's townhouse.  Once inside, the complainant found appellant asleep in a third-story bedroom, she retrieved her identification

2

and keys, and she went to take a shower. The complainant then "tapped" appellant to wake him, told him to pack his things and leave, and went back to the master bedroom and locked the door.

Appellant suddenly forced open the master bedroom door, moved toward the complainant, pointed at her face and shouted repeatedly, "I'm going to fuck you up!" Appellant threw the complainant against a wall and down onto the bed each time she tried to get up. She tried to leave, but because appellant was following her, she ran back to the bedroom where appellant "pinned [her] to the wall" and "grabbed [her] by [the] ankles while [she] was sitting on the couch." Appellant continued to struggle with the complainant, yelling "fucking bitch" and throwing her onto the bed again.

The complainant then grabbed her dog and ran out of the room and down the stairs to the stairwell between the first and second floors. As she was running, appellant grabbed and ripped the complainant's shirt and grabbed and pulled out her hair, causing the complainant to fall and sprain her ankle. As they continued down the stairs, appellant "tackled" the complainant by jumping on her back, causing them both to fall down the stairs. When they landed, the complainant's head was in appellant's lap, and he put her in a "headlock" and squeezed. Appellant then got up and began pacing back and forth for several minutes. When

3

he was furthest away, she ran out the door and back to Seale's townhouse and told her that appellant had "hit her."

The complainant further testified that appellant had also assaulted her in 2005 in his apartment because she was unhappy that he had an "illegal substance" and she wanted to leave. During that incident, appellant pushed her up against a picture frame, breaking the glass, and slapped her face twice. When she tried to telephone for emergency assistance, he grabbed the telephone from her hands and threw it down. Appellant stopped the assault after the complainant screamed, and she was able to leave.

Appellant testified that he and the complainant had an argument about who would drive home after the birthday party. When she refused to get into the car, he drove around the block. When he came back to get the complainant, she was not there, and he drove home. At home, appellant fell asleep and then "woke up to a beating" by the complainant. Although he tried to calm her down, the complainant kicked him in the groin. When she ran into the master bedroom, he used his shoulder to "bust" open the door. When the complainant tried to kick him again, she accidentally kicked a chest instead and hurt her foot. Appellant explained that he tried to get the complainant to calm down, saying that he would make breakfast. However, the complainant kept saying that she wanted him out of the house, and she continued to swing at him with her fists. As appellant backed away toward the

4

stairs, the complainant kicked at him, and he lost his balance. By "reflex," appellant grabbed her foot, and they both slid down the stairs with him falling backward. Appellant expressly testified that he never put the complainant in a headlock, hit her, or pulled her hair.

## Jury Charge

In his first issue, appellant argues that the trial court's charge error caused him egregious harm because its definition of "intentionally" allowed the jury to convict him if it found that "his conduct was intentional without requiring a finding that he intended or knew that injury would result for the complainant." Appellant asserts that the effect of this error was to "charge [appellant] with two offenses": (1) assault and (2) "causing bodily injury by intentionally acting." Appellant acknowledges that he did not object to the jury charge below, but asserts that the erroneous charge caused him egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The State agrees that the trial court erroneously charged the jury, but asserts that appellant was not egregiously harmed by the error.[2]

---

[2]    In his reply brief, appellant asserts that although the State concedes jury charge error, it "misapprehends the nature of the error." He argues that because the trial court's erroneous charge "required the jury to find that the result was intended if the State proved that the conduct was intended" and the trial court "defined intentionally causing a result to include intentionally engaging in conduct that happened to cause the result," required that the jury "convict on grounds not authorized by statute" and "lower[ed] the State's burden of proof." Appellant also

5

A trial court must instruct a jury by "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). A review of charge error involves a two-step analysis. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, we must determine whether error actually exists in the charge, and, second, if error does exist, we must determine whether any harm resulted from the error to require reversal. *Id.* at 731–32.

Here, in the abstract portion of the submitted charge, the trial court correctly defined the offense of assault as:

> Our law provides that a person commits the offense of assault if the person *intentionally or knowingly* causes bodily injury to another person.

(Emphasis added.) The trial court defined the culpable mental states as:

> A person acts knowingly or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to *engage in the conduct* or cause the result.

---

asserts that the trial court's erroneous charge presented an "invalid legal theory" upon which the jury could convict him. We note, however, that the Texas Court of Criminal Appeals has concluded that inclusion of "engage in the conduct" language in the abstract portion of the jury charge definition of the culpable mental state for a result of conduct offense is error because it refers to the "nature of the conduct," which is not a conduct element in a result of conduct offense. *See Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994). Regardless, we conduct our analysis of non-objected-to jury charge error under *Almanza*.

(Emphasis added.) To sustain a conviction for assault, the evidence must prove that a defendant intentionally, knowingly, or recklessly caused bodily injury to another. TEX. PENAL CODE ANN. § 22.01. Assault is a "result of conduct" offense requiring a mental state that relates not to the specific conduct, but to the result of that conduct, i.e., the causing of bodily injury. *See id.; Fuller v. State*, 819 S.W.2d 254, 256 (Tex. App.—Austin 1991, pet. ref'd). "Any other language relating to conduct is inconsequential." *Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994).

Although the trial court's definition of "knowingly" was limited to the result of the conduct, its definition of "intentionally" was not and included the language, "engage in the conduct." Engaging in conduct is not an element of a "result of conduct" offense and is only relevant if the voluntariness of an act is at issue. *Id.* (in prosecution of "result of conduct" offense, intent to engage in conduct is not explicit element to be proven). With a result-oriented offense, the definition of the culpable mental state must be limited to the result of the conduct, and a trial court errs in not limiting the definition. *See id.* at 491; *Fuller*, 819 S.W.2d at 256 (holding that inclusion of "engage in the conduct" language in definitional portion of jury charge is error when offense charged is a result-oriented offense). Accordingly, we hold that the trial court erred in not limiting the definition of

7

"intentionally" in the abstract portion of the jury charge to the result of the conduct.

When, as here, a defendant does not object, or states that he has no objection to a jury charge, an error will not result in reversal unless the record shows "egregious harm" such that the defendant was denied a fair trial. *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008); *see Almanza*, 686 S.W.2d at 171 (harm is egregious if error prevented fair and impartial trial). Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error. *Almanza*, 686 S.W.2d at 174. Egregious harm consists of error affecting the very basis of the case or depriving the defendant of a valuable right, vitally affecting a defensive theory, or making the case for conviction or punishment clearly and significantly more persuasive. *Sanders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991); *Martinez v. State*, 190 S.W.3d 254, 259 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Thus, appellant has the burden to show that he suffered actual harm as a result of the charge error. *Abdnor*, 871 S.W.2d at 732. To determine whether a defendant has sustained harm from a non-objected-to charge, we consider the *Almanza* factors: (1) the entire charge, (2) the state of the evidence including the contested issues and the weight of the probative evidence, (3) the arguments from counsel, and (4)

other relevant information revealed by the record of the trial as a whole. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); A*lmanza*, 686 S.W.2d at 171.

Under the first *Almanza* factor, we examine the entire jury charge. In so doing, we "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994). Although appellant argues that "nothing in the charge" corrected the "misdirection" in the abstract definition of "intentionally," the application portion of the jury charge properly applied the law to the factual context and limited the definition of "intentionally" to the result of appellant's conduct:

> Therefore, if you believe from the evidence beyond a reasonable doubt that in Harris County, Texas, EMORLADE SAMMY, hereafter styled the Defendant, heretofore on or about January 30, 2011, did then and there unlawfully, *intentionally or knowingly cause bodily injury* to CHIE HORIMOTO, a person with whom the Defendant had a dating relationship, hereafter styled the Complainant by pushing the Complainant to the ground or by pulling the Complainant's hair, then you will find the Defendant guilty.

(Emphasis added.) The trial court instructed the jury to find appellant guilty only if it found that he intentionally or knowingly caused the result, bodily injury, rather than upon a finding that appellant intentionally or knowingly engaged in conduct, which inadvertently caused bodily injury. We presume that the jury followed this instruction. *See Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002) (presuming that jury followed instruction); *Williams v. State*, 226 S.W.3d 611, 618

(Tex. App.—Houston [1st Dist.] 2007, no pet.).  The application paragraph pointed the jury to the appropriate portion of the definitions of intentionally and knowingly.  *See Hughes*, 897 S.W.2d at 296.  Texas courts have repeatedly held that where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that error in the abstract portion of the jury charge was egregious.  *See, e.g.*, *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Kuhn v. State*, 393 S.W.3d 519, 529–30 (Tex. App. —Austin 2013, no pet.).

Additionally, the alternative culpable mental state of "knowingly" was properly limited to the result of appellant's conduct.  "The harmfulness of error in a jury charge should be measured, at least in part, against the likelihood that the jury's verdict was actually based upon an alternative theory of culpability not affected by erroneous portions of the charge."  *Williams*, 226 S.W.3d at 618 (quoting *Atkinson v. State*, 923 S.W.2d 21, 27 (Tex. Crim. App. 1996)).  The evidence presented at trial was sufficient for the jury to convict appellant under the knowingly culpable mental state.  Based on the evidence presented, the jury could have reasonable found that appellant knowingly caused bodily injury to the complainant by grabbing her hair and tackling her from behind as she was running down the stairs from appellant.  The jury also heard testimony that appellant threw the complainant against a wall and grabbed her and threw her down on the bed

several times. The evidence supports a finding that appellant knew his conduct was reasonably certain to cause bodily injury; therefore, there was a separate, viable theory of the offense of assault upon which the jury could have convicted appellant. Accordingly, we conclude that this first *Almanza* factor weighs against a finding of egregious harm. *See Williams*, 226 S.W.3d at 618.

Under the second *Almanza* factor, we examine the evidence at trial. The complainant testified that appellant forced open the master bedroom door, pointed in her face, and shouted repeatedly, "I'm going to fuck you up!" Appellant then threw her against a wall and down on the bed several times as she tried to get up. When the complainant ran down the stairs to escape, appellant pulled out her hair and caused her to fall and injure her ankle. Appellant then tackled her by jumping on her back, and they both fell down the stairs. When they landed at the bottom of the stairs, appellant put the complainant in a "headlock" and squeezed around her neck. The complainant suffered scratches, skin tears, and burns from falling down the stairs, bruising on her arms, and a sprained ankle.

The State also presented the testimony of Houston Police Officer A. Silva, who was dispatched to investigate the assault. Upon his arrival, Silva found a "big chunk" of the complainant's hair on the handrail of the stairs. When he interviewed the complainant, Silva saw scratches on her neck and side and a cut on her foot. He saw damage to the frame and door to the master bedroom of her

11

townhome and dents in the walls. In contrast, appellant testified that the complainant started a fight by waking him up, "beating" him, and kicking him in the groin. Although appellant admitted that he forced open the master bedroom door, he denied that he put the complainant in a headlock, hit her, or pulled her hair. And he grabbed the complainant's foot only when she kicked at him, and this caused them both to fall down the stairs. Importantly, we note that appellant's defense centered on his assertion that the complainant was the aggressor against him. He did not assert that he engaged in the complained-of conduct without intending to cause bodily injury. Indeed, he denied that he had engaged in any such conduct. We conclude that the state of the evidence also weighs against a finding of egregious harm.

Under the third *Almanza* factor, we consider the arguments of counsel at trial, noting that jury arguments, alone, are not a dispositive factor in an *Almanza* analysis. *Hutch*, 922 S.W.2d at 174. Appellant's trial counsel argued, correctly, the definition of intentionally: "Did he intend? Did he knowingly try to cause bodily harm to the young lady?" The State erroneously objected to this argument: "Objection, your Honor. That's a misstatement of the law. The intent is not to the bodily injury. It's intent to the act." However, the trial court did not sustain the objection and referred the jury to its charge.

Later, during its closing argument, the State argued:

12

On January 30th she came home early in the morning, walking home. Now, some of these elements that we have to prove, intentionally knowingly, as you heard the defense attorney say, the Judge told you it's going to be in the jury charge and I've kind of bracketed it here in my copy. Knowingly, acting with the knowledge that an act is about to happen or intending that act to happen is what I would argue to you this means or intending the act to cause pain. Not intending to cause pain period.

*I know it sounds a little confusing but this doesn't mean the defendant meant to harm her.* If he meant to pull her hair and it ended up causing her pain, that's fine. If he meant to push her, that's the same thing, okay?

(Emphasis added.) Appellant raised no objection to this argument. Although the highlighted portion of this argument is erroneous and confusing, the State did not repeat the argument. More importantly, as noted above, appellant's defense focused on his assertions that the complainant was the aggressor and he did not engage in the complained-of conduct. Thus, the State's erroneous argument did not at all address his defensive theory. Accordingly, we conclude that the third *Almanza* factor weighs neither for nor against a finding of egregious harm.

After reviewing the record and considering the factors set forth in *Almanza*, we hold that the trial court's error in the abstract portion of the jury charge defining "intentionally" was not egregious.

We overrule appellant's first issue.

13

## Ineffective Assistance of Counsel

In his second issue, appellant argues that his trial counsel rendered ineffective assistance because he failed to object to the erroneous definition of "intentionally" in the abstract portion of the jury charge.

To prove a claim of ineffective assistance of counsel, appellant must show that (1) his counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). A reasonable probability is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that his performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006); *Thompson*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need

to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

To meet the second prong of *Strickland*, appellant must show that his trial counsel's deficient performance damaged his defense to such a degree that there is a reasonable probability the result of the trial would have been different. *See* 466 U.S. at 693. We evaluate this factor while taking into consideration the totality of representation and the particular circumstances of this case. *Thompson*, 9 S.W.3d at 813.

If appellant's trial counsel had objected to the erroneous jury charge, the error would require reversal if it caused only some harm, not egregious harm. *Almanza*, 686 S.W.2d at 171; *Green v. State*, 891 S.W.2d at 298. However, we again note that we have concluded that the application paragraph of the charge focused the jury on the result of appellant's conduct, i.e., "intentionally or knowingly caus[ing] bodily injury," instead of the nature of his conduct. A culpable mental state of "knowingly" was correctly defined in the jury charge, limited to the result of appellant's conduct. And, most importantly, appellant's defense focused on his assertions that the complainant was the aggressor and he did not engage in the complained-of conduct that caused the complainant's injuries. His defense was not that he engaged in the conduct, but did not intend to cause the complainant bodily injury.

Accordingly, we hold that appellant has failed to meet his burden that there was a "reasonable probability that but for the error, the result would have been different." *See Green*, 891 S.W.2d at 299 (concluding no reasonable probability that but for counsel's error, result would have been different when abstract definition of culpable mental state included nature of conduct element but application paragraph focused jury on result of conduct).

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).