Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-10-00078-CR

Christopher O. **WOODRUFF**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-11181
Honorable Sid L. Harle, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:          Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:   October 27, 2010

AFFIRMED

Christopher Woodruff challenges the legal and factual sufficiency of the evidence to support his conviction. Woodruff contends the evidence is insufficient to establish that he "recklessly" injured his elderly seventy-three year old father. We affirm the trial court's judgment.

In determining the legal sufficiency of the evidence, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have

found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As a reviewing court, we "defer to the jury's credibility and weight determinations because the jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State*, No. PD-010-09, 2010 WL 3894613, at *5 (Tex. Crim. App. Oct. 6, 2010). Although Woodruff also asserts a factual sufficiency challenge, the Texas Court of Criminal Appeals recently held, "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks*, 2010 WL 3894613, at *1.

Woodruff was charged with recklessly causing injury to his father, Charles Woodruff, "by pushing Charles Woodruff with the hand of defendant." Injury to an elderly individual is a result offense; therefore, the culpable mental state must apply to the result of appellant's conduct. *Kelly v. State*, 748 S.W.2d 236, 239 (Tex. Crim. App. 1988). A person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. TEX. PENAL CODE ANN. § 6.03(c) (West 2003). In considering whether Woodruff acted recklessly, we examine his conduct to determine whether: (1) the alleged act, viewed objectively at the time of its commission, created a substantial and unjustifiable risk of the type of harm that occurred; (2) the risk was of such a magnitude that disregard of it constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation, *i.e.* it involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; (3) the defendant was consciously aware of the substantial and unjustifiable risk at the time of the conduct; and (4) the defendant consciously disregarded that risk. *Williams v. State*, 235 S.W.3d

742, 755-56 (Tex. Crim. App. 2007). "Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged." TEX. PENAL CODE ANN. § 6.02(e) (West Supp. 2009).

"Establishment of culpable mental states is almost invariably grounded upon inferences to be drawn by the factfinder from the attendant circumstances." *Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989). "The threshold of proof necessary to support a [trier of fact's] finding of [a culpable mental state] is concomitantly low." *Id*.

In *Cano v. State*, the Texas Court of Criminal Appeals held the evidence was sufficient to support a finding that the appellant knowingly or intentionally caused bodily injury to the victim based on the seventy-seven year old victim's testimony that the appellant "hit" or "pushed" her down to the pavement. 614 S.W.2d 578, 579 (Tex. Crim. App. 1981). In the incident, the victim's mouth was so severely cut that she needed several sutures. *Id*.

Similarly, in *Candaleria v. State*, the appellate court held that the victim's testimony was sufficient to establish that the appellant intentionally or knowingly caused the victim's bodily injury. 776 S.W.2d 741, 743-44 (Tex. App.—Corpus Christi 1989, pet. ref'd). In that case, the victim testified that the appellant "used his forearm and upper shoulder to push me into the door." *Id*. at 743. After being pushed, the victim hit the back of his head on the door causing tremendous pain. *Id*.; *see also Pounders v. State*, No. 05-97-01469-CR, 1999 WL 47404, at *1-2 (Tex. App.—Dallas Feb. 3, 1999, no pet.) (holding evidence sufficient to support conviction of injury to an elderly person where victim testified that he was 93 years old and that appellant pushed him to the floor causing a severe cut on his head requiring three stitches) (not designated for publication).

In this case, Officer Richard Pauley was dispatched to Woodruff's house for a family violence call. When he arrived, he saw Woodruff's father sitting outside and bleeding from a gash on the top of his forehead. Woodruff's father told Officer Pauley that Woodruff had thrown him out of the house. Woodruff told Officer Pauley he grabbed or took his father by the hand and walked him to the front door. Woodruff told Officer Pauley that his father then slipped and fell once outside.

Woodruff's father testified that he was seventy-three years old at the time of the incident. Woodruff's father stated that Woodruff was angry at him for coming into the house and was yelling and screaming at him to get out. Woodruff then pushed him out of the door with his hand, and he fell and struck his forehead on the sidewalk. Woodruff's father stated that the push was not a "light tap." Instead, it was a "get out of here" push. Woodruff's father said the push caused him to lose his balance and fall. Woodruff's father identified photographs that depicted the cut on his forehead that required stitches. Woodruff's father also identified the statement he gave police in which he stated Woodruff had shoved him. On cross-examination, defense counsel questioned Woodruff's father extensively regarding how he hit the front of his head after falling backward. Woodruff's father was adamant that he hit his head on the sidewalk and not the metal decorative awning around the porch.

Woodruff testified that his father pushed his way into the house. Woodruff tried to prevent his father from entering, but he did not slam the door because he did not want to hurt his father. Woodruff told his father to get out, but Woodruff's father told him to get out of his way, pushed Woodruff back, and raised his coffee cup. Woodruff thought his father intended to hit him with the coffee cup. Woodruff put his father in a basket hold and led him out to the porch. Woodruff denied pushing or shoving his father. When Woodruff released his father, his father

jerked around and landed on all fours in the grass. Woodruff believed that when his father stood up, his father struck his head on a piece of metal sticking out from the porch railing or awning.

The testimony of Woodruff's father and the inferences the trial court was entitled to draw from the testimony are sufficient to support a finding that Woodruff recklessly caused injury to his father. The trial court could have found that Woodruff pushed or shoved his seventy-three year old father out of the door in anger which created a substantial and unjustifiable risk that his father would fall and injure himself. The potential for Woodruff's seventy-three year old father to fall as a result of being pushed or shoved out of the door constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation. The trial court as the trier of fact could infer that Woodruff was consciously aware of the risk that his father would fall as a result of being pushed or shoved out of the door and that Woodruff consciously disregarded that risk. Accordingly, we hold the evidence is legally sufficient to support Woodruff's conviction.

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH