# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00479-CR

**Edgar Penaloza, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
## NO. C-1-CR-15-217691, HONORABLE MIKE DENTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Edgar Penaloza was charged with assault family violence. In particular, Penaloza was alleged to have "intentionally, knowingly, and recklessly cause[d] bodily injury to PerlaVasquez," who was "a family or household member or an individual with whom [he] had a dating relationship, by hitting [her] on and about the head with [his] hand." *See* Tex. Penal Code § 22.01(a) (setting out elements of offense of assault), (b) (providing that offense is, in general, "Class A misdemeanor"). At the end of the guilt-or-innocence phase, the jury found Penaloza guilty of the charged offense. After the jury reached its verdict, the trial court sentenced Penaloza to 89 days' confinement. *See id.* § 12.21 (listing permissible punishment range for Class A misdemeanor). On appeal, Penaloza challenges the sufficiency of the evidence supporting his conviction and contends that there was error in the jury charge. We will affirm the trial court's judgment of conviction.

## BACKGROUND

During the time relevant to this appeal, Penaloza and Vasquez were dating, were living together, and were raising their young daughter together. Over an extended period of time on the day in question, Penaloza was visiting and drinking with two of his uncles and a cousin at his and Vasquez's home. After Vasquez put her daughter in bed, she joined Penaloza and started drinking. At some point, Vasquez got concerned that they were being too loud and might wake her daughter so she asked everyone to be more quiet. What happened after she made that request is disputed and forms the basis for this appeal. What is not in dispute is that Vasquez left her home to go to her neighbor's house; that her neighbor called the police to report that Penaloza had assaulted Vasquez; that police officers, including Officer Kyle Juusola, responded to the scene; that a counselor from the Austin Police Department Victim Services Team, Claire McCullough, also responded; that Penaloza was arrested that night; and that Penaloza was charged with assaulting Vasquez.

During the trial, Vasquez testified that at around 9:00 p.m. on the day in question, she joined Penaloza and his family members. In addition, she related that after she asked Penaloza to talk more quietly, Penaloza "started getting mad at me for telling him to be quiet so he just started getting into me for like no reason. So then I tried leaving [the situation] and that's when he hit me, he pushed me and I fell down to the floor." When describing the incident in more detail, Vasquez stated that "[h]e pushed me . . . on my right side so I fell to the left" and that Penaloza's hand hit her face. In addition, she explained that although she did not feel pain right when she was struck "because I was just mad at the time," her face did swell and hurt later. Further, she related that "it wasn't an accident" and that Penaloza "came at me." In her testimony, Vasquez explained that she thought that she talked to one of the responding officers but was not certain, but she did state that she

2

talked to McCullough and that she told McCullough or one of the officers that Penaloza hit her but was unsure how she "explained it because I was mad or something." Although Vasquez admitted that she was intoxicated on the night in question, she emphasized that she remembered "what happened" when Penaloza hit her.

In her cross-examination, Vasquez stated that she started drinking at around 10:00 p.m., that she had five mixed drinks that were in "little glasses" over a two-hour period, that the police arrived at around midnight, that she was intoxicated when the officers arrived but not "drunk drunk," and that she did not remember if she told the responding police officers that it hurt when Penaloza struck her because she "was intoxicated" when she talked to them. Moreover, she stated that she did not remember telling the officers that Penaloza's mother was there on that night and that if the police report stated that she told the police that Penaloza's mother was there, the report is incorrect because Penaloza's mother was in another town when the assault occurred. Further, Vasquez stated that she did not remember telling the officers that her daughter was present when the assault occurred or remember when she woke her daughter up that night, but she later testified that her daughter was not present during the incident. In addition, she admitted that she might have said things that were not true on the night in question because she was angry, but she emphasized that her testimony was true and that she was testifying about "what happened, like I remember what happened." Finally, she agreed that she wanted her neighbors to call the police because she was angry at Penaloza and not because she was hurt.

After Vasquez finished testifying, a recording of the 911 call made by Vasquez's neighbor was played for the jury. On the recording, the neighbor stated that Vasquez's boyfriend

3

hit her. At some point on the recording, the neighbor handed Vasquez the phone, and Vasquez also told the dispatcher that Penaloza hit her. While she talked with the dispatcher, Vasquez was distraught and was difficult to understand.

Following the recording being played, Officer Juusola was called to the stand. In his testimony, Officer Juusola recalled that when he arrived at the scene, Vasquez "was pretty hysterical, crying a lot, stated she was punched in the face." Further, Officer Juusola recalled that Vasquez had "some visible swelling and stated that it caused pain," that he was able to see the swelling under her right eye, and that the injury was consistent with what Vasquez had told him about the offense. In his testimony, Officer Juusola also stated that he was not sure if Vasquez was intoxicated that evening but admitted that it was possible, and he related that he did not write in his report that Vasquez appeared intoxicated. On the other hand, Officer Juusola testified that he did note in his report that Penaloza appeared to be intoxicated and also testified that if Vasquez was intoxicated, she was less intoxicated that Penaloza. Further, Officer Juusola communicated that nothing in his interactions with Vasquez made him doubt her story. When describing his interaction with Penaloza, Officer Juusola explained that Penaloza appeared to be "very intoxicated" and "was not fully aware of what was going on" and that when he first approached Penaloza, a neighbor stated that Penaloza had just tried to start a physical fight with him. During his cross-examination, Officer Juusola related that the report that he made regarding the incident stated that he arrived at the scene at 6:30 p.m. Further, Officer Juusola explained that Vasquez initially stated that Penaloza had argued with his mother that night. In addition, Officer Juusola testified that he would generally believe that someone who had consumed five mixed drinks was intoxicated regardless of whether they appeared to be sober.

4

Finally, after Officer Juusola finished his testimony, the State called McCullough to the stand. In her testimony, McCullough explained that when she interacted with Vasquez on the night in question to provide counseling services, Vasquez was very upset and stated that Penaloza "had hit her" and that it gave her a "pain in her head." Further, McCullough recalled that she noticed "a red mark on" Vasquez's neck, that she asked Vasquez "if she had been strangled," and that Vasquez answered by saying that she did not remember. Moreover, McCullough explained that Vasquez admitted that she had been drinking that night and that "[i]t was unclear" whether Vasquez was having trouble remembering what happened that evening because "[s]he was crying so much that all of the information that I got came in bits and pieces." During her cross-examination, McCullough admitted that she did not remember seeing any injuries to Vasquez other than the mark on her neck and explained that Vasquez appeared intoxicated.

Following the conclusion of McCullough's testimony, both sides rested, and a jury charge was prepared and submitted to the jury. Neither the State nor Penaloza objected to the jury charge. After the State and Penaloza concluded their closing arguments, the jury returned a guilty verdict. On appeal, Penaloza challenges the sufficiency of the evidence of his conviction and asserts that there was jury-charge error.

## DISCUSSION

### Legal Sufficiency

In his first issue on appeal, Penaloza contends that the evidence was legally "insufficient to prove that [he] hit or pushed [Vasquez] or that he did so with a culpable mental state

5

because [Vasquez]'s intoxication rendered her perceptions so unreliable that her memory of events was not sufficient to meet the beyond a reasonable doubt standard."

Under a legal-sufficiency standard of review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the fact-finder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Further, reviewing courts "measure the sufficiency of the evidence by the so-called hypothetically correct jury charge, one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant

6

is tried." *See DeLay v. State*, 465 S.W.3d 232, 244 n.48 (Tex. Crim. App. 2014). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Kiffe*, 361 S.W.3d at 107 (quoting *Jackson*, 443 U.S. at 320).

The Penal Code specifies that a person commits an assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." *See* Tex. Penal Code § 22.01(a)(1). "'Bodily injury'" is defined as "physical pain, illness, or any impairment of physical condition," *id.* § 1.07(a)(8), and a fact-finder "may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some natural causes of it," *Wingfield v. State*, 282 S.W.3d 102, 105 (Tex. App.—Fort Worth 2009, pet. ref'd).

When challenging the sufficiency of the evidence, Penaloza urges that the evidence established that Vasquez was "highly intoxicated on the night in question" through Vasquez's admissions, through her inability to fully recall the events of the night in question, through her testimony indicating that she believed that the alleged offense occurred after 10:00 p.m. even though Officer Juusola's testimony and report indicated that the events occurred much earlier, through McCullough's testimony stating that Vasquez was intoxicated several hours after Officer Juusola first arrived and that it was unclear if Vasquez was able to fully recall the events of the evening, through Officer Juusola's testimony communicating that Vasquez told him that Penaloza had been in a fight with his mother that evening even though Penaloza's mother was not present that night or in the same town, through inconsistencies in Vasquez's testimony and her statement to the police regarding whether her daughter was present during the assault, and through portions of the recording

7

played for the jury in which Vasquez was crying and had difficulty communicating. In light of the above, Penaloza insists that the there was a "question of whether [Vasquez] had reliable perceptions given her physical and mental state" and asserts that none of the witnesses testified that Vasquez was, despite the evidence of her intoxication, "nevertheless in possession of her normal faculties." Further, Penaloza notes that although Officer Juusola testified that he observed swelling under Vasquez's eye, McCullough did not provide similar testimony.[1] Moreover, Penaloza points to portions of Vasquez's testimony in which she admitted that she might have said things that were not true on the night in question because she was angry. For all of these reasons, Penaloza insists that "the evidence showed that [Vasquez's] perceptions and memory were too corrupted to meet the high burden of" proving that he hit her and that he injured her while having "a culpable mental state."

Although Penaloza highlights that Vasquez and McCullough both testified that Vasquez was intoxicated on the night in question and points to inconsistencies in the testimony presented at trial as support for his assertion that Vasquez's testimony was insufficient to support the conviction due to her level of intoxication, the fact that a witness was intoxicated "would not render the evidence legally insufficient" where a rational jury could credit the witness's testimony. *See Vasquez v. State*, 67 S.W.3d 229, 237 (Tex. Crim. App. 2002). Moreover, as the fact-finder, the jury was tasked with evaluating the credibility of the witnesses and could have credited Vasquez's

---

[1] In his brief, Penaloza notes that two photos taken of Vasquez's alleged injuries on the night in question were admitted at trial and urges that those photos did not reveal any injury. However, Officer Juusola stated in his testimony that he personally observed the swelling underneath Vasquez's eye and further explained that unlike bruising, swelling does not always show up well in a photograph. In addition, those photos are part of the record before this Court and do seem to show some swelling beneath Vasquez's right eye.

testimony regarding the assault despite the evidence indicating that she was intoxicated. *See Cain v. State*, 958 S.W.2d 404, 409 (Tex. Crim. App. 1997) (noting in factual-sufficiency review that evidence that victim was intoxicated and had trouble remembering assault bore upon her credibility, that credibility determination was "within the exclusive province of the jury," and that "it is equally plausible that the victim's story, although 'confused' is true and credible"); *Moore v. State*, No. 03-02-00637-CR, 2003 WL 21466924, at *2 (Tex. App.—Austin June 26, 2003, no pet.) (mem. op., not designated for publication) (stating that "[t]he fact finder may believe a witness even though some of the witness's testimony may conflict with other evidence in the record").

Besides, Officer Juusola testified that he did not indicate in his report that Vasquez was intoxicated on the night in question even though he did make that type of entry into his report regarding Penaloza and did not testify that Vasquez did not have the normal use of her faculties; on the contrary, Officer Juusola explained that nothing in his interactions with Vasquez caused him to doubt the accuracy of her statements. In addition, Vasquez told her neighbor, the 911 dispatcher, Officer Juusola, and McCullough that she had been hit and specifically told Officer Juusola, the 911 dispatcher, and McCullough that Penaloza was the person who hit her, and Officer Juusola testified that the injuries to Vasquez's face that he observed were consistent with her statement about what happened. *See Smith v. State*, No. 14-05-00533-CR, 2006 WL 1735107, at *4 (Tex. App.—Houston [14th Dist.] June 27, 2006, pet. struck) (mem. op., not designated for publication) (explaining that "[t]he fact that an eyewitness was intoxicated at the time of the [offense] does not automatically render the evidence insufficient to support a conviction" and that witness's testimony was not insufficient where record did not show that witness did not have normal use of faculties at time of

offense or when she gave statement to police and where "her statement was sufficiently corroborated by other credible evidence"); *Jasso v. State*, 112 S.W.3d 805, 809 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (concluding that although "the evidence shows the complainants had consumed significant amounts of alcohol in the six-hour period preceding the robbery, this did not prevent them from remembering and recounting what transpired and it does not render the evidence legally insufficient to support appellant's conviction" where witnesses were able to provide coherent answers to questions posed by police and where witnesses testified that their levels of intoxication did not prevent them from accurately remembering offense).

Furthermore, even though there were inconsistencies between Vasquez's testimony and the testimony from the other witnesses on topics that did not directly bear upon the elements of the offense, Vasquez repeatedly testified that she remembered the assault and that Penaloza was the person who assaulted her, and there was no evidence presented at trial indicating that the assailant could have been anyone other than Penaloza. *See Sherrod v. State*, No. 03-14-00584-CR, 2016 WL 6156227, at *1 (Tex. App.—Austin Oct. 19, 2016, no pet. h.) (mem. op., not designated for publication) (explaining that reviewing courts presume "that the trier of fact resolved conflicts in the testimony . . . in a manner that supports the verdict"); *Killebrew v. State*, No. 05-04-00697-CR, 2005 WL 1840047, at *2 (Tex. App.—Dallas Aug. 4, 2005, pet. dism'd, untimely filed) (not designated for publication) (stating that "the jury, as the sole judge of the witnesses' credibility, could disbelieve" testimony contradicting other testimony). In addition, Vasquez testified that Penaloza got angry with her immediately before the assault and did not accidentally hit her in the face, *see Killebrew*, 2005 WL 1840047, at *2 (concluding that evidence was sufficient to support conviction for assault where witness testified that defendant was mad at victim, hit victim, and

10

intended to hit victim and where officer testified that victim had bruise and laceration under eye), and Officer Juusola testified that when he found Penaloza after responding to the scene, a neighbor told Officer Juusola that Penaloza had just tried to start a fight with the neighbor.

Finally, although Vasquez testified that she did not experience pain at the moment she was hit, she testified that she experienced pain afterwards and also told Officer Juusola and McCullough that she was experiencing pain when she talked to them after the incident. *See Settlemyre v. State*, 489 S.W.3d 607, 608-09 (Tex. App.—Eastland 2016, pet. ref'd) (finding evidence sufficient to support determination that victim suffered bodily injury where victim testified that she felt little pain when assault occurred but felt pain later and where officer testified that he observed injury to wrist and that victim told officer that she was experiencing pain and explaining that "the Texas Penal Code requires nothing more to prove 'bodily injury' than the evidence presented here"); *Rudolph v. State*, Nos. 02-13-00240—00241-CR, 2014 WL 3696138, at *3 (Tex. App.—Fort Worth Jul. 24, 2014, no pet.) (mem. op., not designated for publication) (determining that evidence was sufficient and stating that "[t]he jury could have reasonably inferred that Johnson's swollen, split open lip would have caused her physical pain after the shock and 'numb[ness]' of the events wore off"); *see also Arzaga v. State*, 86 S.W.3d 767, 778-79 (Tex. App.—El Paso 2002, no pet.) (providing that testimony that victim had swelling to her lips, had bruising, and had cut permitted "an inference by the jury that [the victim] suffered physical pain" even though "[n]o witness directly testified that [the victim] suffered pain as a result of being struck").

In light of the evidence summarized above and of the reasonable inferences that can be made from that evidence and given our standard of review, we must conclude that the evidence

is legally sufficient to establish that Penaloza assaulted Vasquez by intentionally, knowingly, or recklessly causing bodily injury to her by hitting her with his hand. *See* Tex. Penal Code § 22.01(a)(1). Accordingly, we overrule Penaloza's first issue on appeal.

**Jury Charge**

In his second issue on appeal, Penaloza contends that "[t]he trial court erred in failing to limit the definition of the mental states in the jury charge to the result of [his] conduct." *See* Tex. Code Crim. Proc. art. 36.14 (requiring trial court to provide jury with "a written charge distinctly setting forth the law applicable to the case"). Specifically, Penaloza asserts that in the portion of the charge setting out the applicable culpable mental states, the trial court failed to "limit the definitions of the culpable mental states to the result of the conduct" but should have because assault is a result-of-the-conduct offense. *See* Tex. Penal Code § 6.03 (listing four different culpable mental states); *see also Price v. State*, 457 S.W.3d 437, 441-42 (Tex. Crim. App. 2015) (stating that section 6.03 of Penal Code lists four culpable mental states and "two possible conduct elements—nature of the conduct and result of the conduct," that "the language in regard to the culpable mental state must be tailored to the conduct elements of the offense," that "the jury charge on culpable mental state should be tailored to the result of conduct" "[i]f the gravamen of an offense is the result of conduct," and that "[t]he gravamen of assault with bodily injury is injury, a result of conduct").

Appellate courts review claims regarding alleged jury-charge errors under a two-pronged test, *see Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd), with the first prong being a determination regarding "whether error exists" and with the second prong requiring courts to evaluate the harm caused by the error, *Ngo v. State*, 175 S.W.3d 738, 743

(Tex. Crim. App. 2005). The amount of harm needed for a reversal depends on whether a complaint regarding "that error was preserved in the trial court." *Swearingen*, 270 S.W.3d at 808. If the defendant made a timely objection, reversal is required if there has been "*some* harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). However, if no objection was made, a reversal is warranted only if the error "resulted in 'egregious harm.'" *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008) (quoting *Almanza*, 686 S.W.2d at 171).

The relevant portion of the jury charge instructed as follows:

> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
>
> A person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

In light of the language above, Penaloza asserts that the trial court failed to properly tailor the instructions to account for the fact that assault bodily injury is a result-of-the-conduct offense by including in the intentional definition the phrase "conscious objective or desire to engage in the conduct" and in the reckless definition the phrase "consciously disregards a substantial and unjustifiable risk that the circumstances exist." Further, Penaloza urges that the inclusion of the improper language in the charge allowed the jury to convict him based on evidence relating to

13

his desire to engage in conduct rather than his desire for a result to occur. *See Brooks v. State*, 967 S.W.2d 946, 950 (Tex. App.—Austin 1998, no pet.) (explaining that "[t]o be guilty of assault, one must intend the *result* of the conduct, not just the conduct itself"). Specifically, he contends that the jury instruction allowed the jury to convict him based on evidence that he intended to commit the conduct of attempting to stop Vasquez from leaving their home by putting his hand out or that he consciously disregarded a substantial risk surrounding his attempt to stop her from leaving rather than allowing a conviction only if he intended to cause bodily injury, knew that his actions would likely cause bodily injury, or was reckless as to whether his actions would cause bodily injury.

Moreover, although Penaloza acknowledges that he did not object to the allegedly improper language in the jury charge, he contends that this Court should still sustain his issue because the error egregiously harmed him. In its brief, the State concedes that the jury charge did contain the errors alleged by Penaloza but asserts that he was not egregiously harmed by those errors. *See Fuller v. State*, 819 S.W.2d 254, 256 (Tex. App.—Austin 1991, pet. ref'd) (concluding that "the inclusion of the 'engage in conduct' language in the definitional portion of a jury charge is in fact error where the offense charged is a result offense").

"Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). "The purpose of the egregious-harm inquiry is to ascertain whether the defendant has incurred actual, not just theoretical, harm," *Swearingen*, 270 S.W.3d at 813, and "reversal for an unobjected-to erroneous jury instruction is proper only if the error caused actual, egregious harm to" the defendant, *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). The determination depends "on the unique circumstances of" each case

14

and "is factual in nature." *Saenz v. State*, 479 S.W.3d 939, 947 (Tex. App.—San Antonio 2015, pet. ref'd); *see Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002) (stating "that egregious harm is a difficult standard" to meet). Neither side has the burden of establishing either the presence or a lack of harm. *See Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008). Instead, the reviewing court makes "its own assessment" when evaluating what effect an error had on the verdict by looking at the record before it. *Ovalle v. State*, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000). "When assessing harm based on the particular facts of the case, we consider (A) the entire jury charge; (B) 'the state of the evidence[,] including contested issues and the weight of the probative evidence'; (C) the parties' arguments; and (D) all other relevant information in the record." *Arrington*, 451 S.W.3d at 840 (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). The analysis is "fact specific and is done on a 'case-by-case basis.'" *Id.* (quoting *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013)).

*The Entire Jury Charge*

Although the definition section of the charge contained the errors identified by Penaloza, the portion defining assault linked the mental states to the result of the offense by defining assault as occurring when "[a] person . . . intentionally, knowingly, or recklessly causes bodily injury to another." Moreover, the application paragraph instructed the jury to find Penaloza guilty only if it found beyond a reasonable doubt that Penaloza "did then and there intentionally, knowingly or recklessly cause bodily injury to [Vasquez] by hitting [her] on or about the head with [his] hand." Accordingly, the application paragraph limited the application of the culpable mental states to the result and instructed that the jury could not find Penaloza guilty unless it found that he intentionally

15

caused the result, knew what the result would be, or was reckless regarding what the result would be. *See Fuller*, 819 S.W.2d at 257 (concluding that defendant was not harmed from jury-charge error that improperly included nature-of-conduct language as well as result-of-conduct language in definition section of charge for result offense where, among other things, application paragraph limited mental-state definitions by stating that jury could only find defendant guilty if he "'intentionally or knowingly cause[d] bodily injury'" to victim); *Schumacher v. State*, 814 S.W.2d 871, 873-74 (Tex. App.—Austin 1991, no pet.) (addressing argument that jury charge for assault offense contained error where "it failed to limit the definitions of the culpable mental states . . . to the *result* of the offense" and explaining that "[n]o one reading the application paragraph in this cause, which tracked § 22.01, would be misled into believing that appellant should be convicted if he intentionally or knowingly engaged in the conduct without intending the result"). Accordingly, this factor weighs against a finding of egregious harm.

*The State of the Evidence in the Record*

"[U]nder this prong of an egregious harm review, we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm." *Arrington*, 451 S.W.3d at 840.

In his brief, Penaloza points to portions of Vasquez's testimony in which she stated that she told Penaloza to be quiet, that she decided to go outside after he got mad, that he walked towards her and pushed her, and that she was surprised when his hand hit her face because she thought he was coming over to her to stop her from leaving their home. In light of this testimony, Penaloza contends that there was "comparatively strong evidence of intent to commit the

16

conduct—putting his hand out to stop her—and [was] weak evidence that he pushed her to inflict injury," knew that his actions could result in injury, or was reckless about whether his actions might result in injury. However, we cannot agree that Vasquez's testimony that she initially thought that Penaloza might try to stop her from leaving when he came towards her and was surprised when Penaloza instead pushed or hit her on the face is strong evidence of an intent by Penaloza to engage in the conduct of reaching out his hand to stop her. Moreover, in light of the remainder of the evidence set out in the first issue establishing that Penaloza got angry with Vasquez, that he acted deliberately and not accidentally when he struck her, that she sustained an injury near her eye, and that she experienced pain from the injury, it seems logical to assume that the jury's basis for determining his guilt was not founded on evidence of his mental state as it purportedly pertained to efforts to stop Vasquez from leaving by reaching out his hand. *Cf. Ruiz v. State*, 272 S.W.3d 819, 826-27 (Tex. App.—Austin 2008, no pet.) (determining that state of evidence weighed against finding of egregious harm where defendant argued that he committed none of alleged misconduct and that victim was lying to get revenge on defendant). "Because the entire record fails to show actual harm to" Penaloza, "this factor weighs against a finding of egregious harm." *See Arrington*, 451 S.W.3d at 844.

*Parties' Arguments*

"Under this factor, we look to whether any statements made by the State, appellant, or the court during the trial exacerbated or ameliorated error in the charge." *Id.*

During their opening arguments, neither side discussed what the potential evidence might reveal during the trial or discussed the ways in which the jury could find Penaloza guilty. In

17

its closing argument, the State did not assert that the jury could find Penaloza guilty of assault if the elements of one of the culpable mental states were met as they pertained to the conduct of raising his hand to stop Vasquez from leaving or otherwise find him guilty without determining that Penaloza caused bodily injury. Although the State did assert in its discussion of the culpable-mental-state element of the offense that Penaloza "very intentionally hit her" "on or about the head with [his] hand" after he got angry at her and when she tried to leave, the State did not suggest that a conviction would be proper without finding that Penaloza caused Vasquez to suffer bodily injury. In fact, the State later emphasized in its discussion of the bodily-injury element that the jury must find that that element is met as well and focused much of its discussion on the portion of the jury charge pertaining to bodily injury. For example, the State explained that the jury must determine if Penaloza "[d]id then and there intentionally, knowingly or recklessly, we just spoke about that, cause[] bodily injury." Further, the State emphasized that the testimony established that Penaloza caused bodily injury to Vasquez and that the injury was painful, went over the type of family relationship that existed between Penaloza and Vasquez, discussed the evidence showing that Penaloza and Vasquez were intoxicated at the time of the offense, and talked about the conflicts in the testimony regarding when the incident occurred. Similarly, Penaloza did not suggest in his closing that the jury charge allowed the jury to convict without proof that Penaloza intentionally, knowingly, or recklessly caused bodily injury to Vasquez and instead emphasized the testimony regarding Vasquez being intoxicated, the testimony from Vasquez that she did not feel pain at the time of the assault, the testimony describing the injury, and the disparities between Vasquez's testimony and her initial statement to the police, and Penaloza also urged that Vasquez did not have

18

a strong recollection of the incident. Accordingly, this factor weighs against a finding of egregious harm, and we have found no other relevant information in the record bearing upon this issue.

In conclusion, none of the factors weigh in favor of a determination that Penaloza was egregiously harmed by the erroneous jury instruction, and for that reason, we overrule Penaloza's second issue on appeal.

## CONCLUSION

Having overruled Penaloza's two issues on appeal, we affirm the trial court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   November 30, 2016

Do Not Publish